UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

EDA AK, CEM SUMERER and OLANDO     :
ESPINAL,                            :
          Plaintiffs,             :
                                    :
          v.                      :    No.   5:21-cv-4507
                                    :
MERRICK GARLAND, *Attorney General*, *et al.*, :
          Defendants.             :
_____

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 22 – Denied**
**Plaintiffs' Motion for Summary Judgment, ECF No. 24 – Granted**

**Joseph F. Leeson, Jr.**                                      **August 2, 2022**
**United States District Judge**

I.    **INTRODUCTION**

        This matter involves an I-130 petition filed by Plaintiff Orlando Espinal, which seeks preference status for his wife, Plaintiff Eda Ak and her son, Plaintiff Cem Sumerer. United States Citizenship and Immigration Services (USCIS) denied Espinal's petition, a decision that was affirmed by the Board of Immigration Appeals (BIA). Plaintiffs assert that the denial was arbitrary, capricious, and in violation of the law. Following the filing of the administrative record, Plaintiffs and Defendants filed cross-motions for summary judgment.

        Following a review of the administrative record in light of the guiding legal principles, this Court concludes that USCIS violated the Administrative Procedures Act (APA). Accordingly, Plaintiffs' motion for summary judgment is granted, and Defendants' motion for summary judgment is denied.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

Ak and her son, Sumerer, are citizens of Turkey.  *See* Pls. Stmt. Undis. Facts ¶ 2 ("PSUF"), ECF No. 24-2; Defs. Resp. Undis. Facts ¶ 2 ("DRUF"), ECF No. 26-1.  Espinal is a United States Citizen.  *See* PSUF ¶ 2; DRUF ¶ 2.  In 2009, Ak and Sumerer entered the United States on non-immigrant visas.  *See* PSUF ¶ 3; DRUF ¶ 3.  On May 20, 2010, a wedding ceremony for Ak and Espinal was held in Pennsylvania.  *See* PSUF ¶ 4; DRUF ¶ 4.  Plaintiffs filed their first I-130 petition on January 23, 2011.  *See* PSUF ¶ 5; DRUF ¶ 5.  Plaintiffs were interviewed in connection with this petition, and an investigation was conducted by the office of Fraud Detection and National Security (FDNS).  *See* PSUF ¶¶ 6–7; DRUF ¶¶ 6–7.  On April 30, 2012, USCIS issued a "Notice of Intent to Deny" (NOID) to Plaintiffs.  *See* PSUF ¶ 8; DRUF ¶ 8.  Plaintiffs responded to the NOID with additional evidence of the bona fides of their marriage.  *See* PSUF ¶ 8; DRUF ¶ 8.  On March 25, 2013, USCIS denied the Plaintiffs' first I-130 petition.

On April 22, 2013, Plaintiffs filed a second I-130 petition, which is the operative petition in the instant matter.  *See* PSUF ¶ 9; DRUF ¶ 9.  Three years later, on March 30, 2016, USCIS issued a Request for Evidence to Plaintiffs in relation to the petition.  *See* PSUF ¶ 10; DRUF ¶ 10.  Among other evidence sought, the Request for Evidence also directed Plaintiffs to file form I-601, an Application for Waiver of Ground of Inadmissibility.  *See* PSUF ¶ 10; DRUF ¶ 10.[1]  Plaintiffs responded to the Request for Evidence by filing the Form I-601 and providing additional evidence of the bona fides of their marriage.  *See* PSUF ¶ 11; DRUF ¶ 11.

---

[1]     The form was required by USCIS based on the agency's finding that Ak had made a material misrepresentation in the operative I-130 petition, which related to the residence of her son Sumerer.  The parties dispute whether any misrepresentation actually occurred.  *See* PSUF ¶ 10; DRUF ¶ 10.

Three years later, on March 6, 2019, USCIS issued a NOID for the operative petition. *See* PSUF ¶ 12; DRUF ¶ 12. Plaintiffs responded to the NOID with additional evidence on April 5, 2019. *See* PSUF ¶ 12; DRUF ¶ 12. On May 16, 2019, USCIS denied the operative petition. *See* PSUF ¶ 13; DRUF ¶ 13. Plaintiffs appealed the decision to the Board of Immigration Appeals (BIA), and the appeal was ultimately denied on July 30, 2020. *See* PSUF ¶ 13; DRUF ¶ 13.

On October 14, 2021, Plaintiffs filed suit before the Court, seeking this Court's review of the BIA's denial of their appeal. *See* Compl., ECF No. 1. In particular, Plaintiffs assert that the BIA's decision was arbitrary and capricious, or otherwise violated the Fifth Amendment. *See id.* Following the filing of the administrative record, *see* ECF Nos. 13, 14, 15, and 16, [2] the parties filed cross-motions for summary judgment. *See* Defs. Mot., ECF No. 22; Pls. Mot., ECF No. 24. After a series of responses, the motions are ready for review. *See* Pls. Resp., ECF No. 25; Defs. Resp., ECF No. 26.

### III. LEGAL STANDARDS

#### A. Review of Agency Decision on Motion for Summary Judgment – Review of Applicable Law

"Although 'summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record' the district court is acting as an appellate tribunal, and 'the usual summary judgment standard does not apply.'" *See Zizi v. Bausman*, 306 F. Supp. 3d 697, 702 (E.D. Pa. 2018) (quoting *Dorley v. Cardinale*, 119 F. Supp.

---

[2] Because the administrative record in this matter spans multiple docket entries, each with multiple parts, the Court refers to the record first by the docket number and then by the ECF-generated page number. For example, page 103 of the record docketed at ECF No. 15-3 would be referenced as "Record 15-3 at 103."

3d. 345, 351 (E.D. Pa. 2015)). Rather, "[u]nder the APA, a district court may only set aside agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *See id.* (quoting 5 U.S.C. § 706(2)(a)).

Under the first group of factors, in determining whether the agency's action was arbitrary, capricious, or an abuse of discretion, the court must "look[] at the reasoning the agency employed in coming to its decision." *See id.* (citing *Mirjan v. Atty. Gen. of United States*, 494 F. App'x 248, 250 (3d Cir. 2012)). In particular, an action is "arbitrary and capricious where 'the evidence not only supports a contrary conclusion but compels it.'" *See id.* (quoting *Yitang Sheng v. Atty. Gen. of United States*, 365 F. App'x 408, 410 (3d Cir. 2010)). A court may reverse the agency decision "only where the administrative action is irrational or not based on relevant factors." *See id.* (quoting *NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 190 (3d Cir. 2006)). A decision is irrational or based on irrelevant factors where "the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence." *See id.* (quoting *NVE, Inc.*, 436 F.3d at 190).

Under the final factor, in determining whether the agency's action was otherwise not in accordance with the law, the court must determine whether the agency's decision, even if "well-reasoned, violate[s] other statutory or regulatory strictures." *See id.*

The district court should base its review on "the administrative record already in existence, not some new record made initially in the reviewing court." *See id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Moreover, a district court "may not substitute its judgment for that of the agency." *See id.* (citing *Judulang v. Holder*, 565 U.S. 42, 52 (2011)). Rather, the court must only determine whether the agency has articulated a "satisfactory explanation for its

action including a rational connection between the facts found and the choice made . . . ." *See id.* (quoting *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011)).

B. **Spousal Eligibility for Lawful Permanent Residency through Form I-130 – Review of Applicable Law**

"A United States citizen may apply for her alien spouse to obtain lawful permanent residence by filing an I-130 Petition with USCIS."[3] *See Young v. Bausman*, Civ. A. No. 19-1870, 2020 WL 996423, at *5 (E.D. Pa. Mar. 2, 2020) (citing 8 C.F.R. §§ 204.1(a)(1), 204.2(a)). However, such a petition cannot be approved if

> the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or [ ] the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

*See id.* (alterations in original) (quoting 8 U.S.C. § 1154(c)).

In the event USCIS "discovers evidence supporting marriage fraud, it will issue a [NOID], inform the petitioner of its reasons for denial, and allow the petitioner to present rebuttal evidence." *See id.* (quoting *Keita v. Barr*, No. CV 19-980, 2019 WL 5551425, at *5 (E.D. Pa. Oct. 28, 2019)). Once a NOID is issued, the burden of proof shifts to the petitioner "to establish that the prior marriage was not entered into for the purpose of evading immigration laws." *See id.* (quoting *Keita*, 2019 WL 5551425, at *5). USCIS may ultimately deny an I-130 petition "where there is substantial and probative evidence of marriage fraud." *See id.*

---

[3] The granting of the I-130 petition does not itself confer lawful permanent resident status. Rather, it provides the beneficiary, who must be an "immediate relative" of the petitioner, with a "preference status." *See* 8 U.S.C. § 1154(b). As one court explained, the preference status exempts the beneficiary from "the annual quotas imposed on other family-based immigration classifications." *See Saleh v. Holder*, 54 F. Supp. 3d 1163, 1169 (D. Nev. 2014). In other words, the beneficiary of a granted I-130 petition may "jump the line by immediately applying for lawful permanent resident status." *See id.* (citing 8 U.S.C. § 1151(b)(2)).

"Substantial evidence is more than scintilla, but . . . something less than a preponderance of the evidence." *See id.* (quoting *Salvador v. Sessions*, No. CV 18-01608, 2019 WL 1545182, at *3 (E.D. Pa. Apr. 9, 2019)).

### C.   Unreasonable Delay in Agency Action – Review of Applicable Law

The Administrative Procedures Act (APA) provides that USCIS, among other agencies, must act "within a reasonable time" to "conclude a matter presented to it." *See* 5 U.S.C. § 555(b). "To determine the reasonableness of a delay under the APA, courts consider the six factors articulated in *Telecommunications Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984)." *See Daraji v. Monica*, No. 07-1749, 2008 WL 183643, at *5 (E.D. Pa. Jan. 18, 2008) (citing *TRAC*, 750 F.2d 70). These factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*See id.* at *5 n.8 (citing *TRAC*, 750 F.2d at 80).

The Third Circuit has articulated additional factors to be considered when adjudicating the reasonableness of a delay under the APA:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agencies action. Third, the court should assess the consequences of the agency's delay. Fourth, the court should consider any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

*See id.* at *5 (citing *Oil, Chemical, & Atomic Workers Union v. OSHA ("OCAWU")*, 145 F.3d 120, 123 (3d. Cir. 1998)).

"A court's inquiry into the reasonableness of an agency's delay under the APA is necessarily case-by-case and 'fact-intensive . . . .'" *See id.* (quoting *OCAWU*, 145 F.3d at 123.

## IV. ANALYSIS

In their Complaint, Plaintiffs assert two categories of claims. First, Plaintiffs assert that USCIS acted arbitrarily, capriciously, or not in accordance with the law in its review of the operative petition. Second, Plaintiffs assert certain violations of the Fifth Amendment with respect to USCIS's review of the operative petition.

In review of Plaintiffs first set of claims, this Court concludes that USCIS failed to act in accordance with the law in its handling of the I-130 petition.[4] Put another way, USCIS engaged in unreasonable delay under 5 U.S.C. § 555(b) and 5 U.S.C. § 706(1) that resulted in Plaintiffs suffering prejudice. Accordingly, Plaintiffs' motion is granted, and Defendants' motion is denied. This Court remands the matter with specific instructions for curing the prejudice and performing a new adjudication of the petition. The Court does not address Plaintiffs' additional claims at this time.

### A. Whether USCIS Engaged in Unreasonable Delay

Plaintiffs claim that USCIS engaged in an unreasonable delay in the adjudication of their second I-130 petition, leading to prejudice. In their response to Plaintiffs' motion for summary

---

[4] In their briefing, Plaintiffs first assert that USCIS acted arbitrarily and capriciously in denying the operative petition on the merits. Notwithstanding, it would be unhelpful to entertain a review of that claim at this time. As the Court explains below, USCIS engaged in an unreasonable delay that prejudiced Plaintiffs' opportunity to adequately respond to certain evidence that formed the basis of USCIS's decision to deny the operative petition. Accordingly, in light of the role the prejudicial evidence played in Agency's decision on the merits, a review of the decision at this juncture would be futile.

judgment, Defendants briefly address the matter, arguing that they complied with the APA in their handling of the operative petition.

Notwithstanding Defendants' arguments to the contrary, this Court concludes that USCIS engaged in unreasonable delay in the adjudication of the operative petition. Moreover, as explained below, the Court finds that the delay prejudiced Plaintiffs, insofar as it deprived Plaintiffs of an adequate opportunity to rebut certain evidence that was central to USCIS's decision to deny the petition. Accordingly, this Court remands the matter for a new adjudication of Plaintiffs' petition, including special instructions aimed at curing the prejudice caused by USCIS's unreasonable delay.

1. *TRAC* and *OCAWU* Factors

In determining whether USCIS engaged in unreasonable delay violative of the APA, this Court is guided by the factors set forth in both *TRAC* and *OCAWU*, which are set forth in full above. *See TRAC*, 750 F.2d at 80; *OCAWU*, 145 F.3d at 123. While the *TRAC* factors are not binding on this Court, the Court nonetheless finds their application helpful in determining the reasonableness of the delay alleged.

As a threshold matter, this Court must first decide whether the agency, in this case USCIS, had a nondiscretionary duty to act. *See Doe #1 v. Wolfe*, 1:20-cv-02339, 2021 WL 4149186, at *3 (M.D. Pa. Sept. 13, 2021) (noting plaintiff alleging unreasonable delay must show "an agency "failed to take a *discrete* agency action that it is *required* to take." (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original))). As courts in this district have noted, the "grant of an I-130 petition for immediate relative status is a nondiscretionary decision." *See Zizi v. Bausman*, 306 F. Supp. 3d 697, 708 (E.D. Pa. 2018) (quoting *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013)). Based on this proposition, at

a minimum, this Court concludes that USCIS had a nondiscretionary duty to *adjudicate* Plaintiffs' I-130 petition.  Accordingly, having determined that USCIS had a nondiscretionary duty to adjudicate Plaintiffs' I-130 petition, and recognizing that the time for completing this duty is governed by the reasonableness strictures of the APA, this Court turns to a review of the subject delay.

### a. The Period of Delay

Beginning with the first *TRAC* factor, the time for the USCIS to act in this case is governed by a rule of reason.  Specifically, 5 U.S.C. § 555(b) provides that agencies, including USCIS, must act "within a reasonable time" to "conclude a matter presented to it."  *See* 5 U.S.C. § 555(b); *see also* 5 U.S.C. § 706(1) (instructing the reviewing court to compel agency action that is "unreasonably delayed").  However, under the second *TRAC* factor, neither the statutory nor regulatory schemes provide a timetable for the agency decision.  Accordingly, this Court must determine, in the absence of a governing timetable, whether USCIS's delay in this case was reasonable.

As the first *OCAWU* factor instructs, the Court looks to the length of time that elapsed since USCIS was under a duty to act.  *See OCAWU*, 145 F.3d at 123.  Plaintiffs filed the operative I-130 petition on April 22, 2013.  *See* PSUF ¶ 9; DRUF ¶ 9.  It was not until nearly three years later, on March 30, 2016, that USCIS issued a Request for Evidence to Plaintiffs.  *See* PSUF ¶ 10; DRUF ¶ 10.  Plaintiffs responded to the Request for Evidence with additional evidence on May 25, 2016.  *See* PSUF ¶ 11; DRUF ¶ 11.  Thereafter, USCIS waited another three years, until March 6, 2019, before issuing a NOID on the operative petition.  *See* PSUF ¶ 12; DRUF ¶ 12.  Plaintiffs responded to the NOID on April 5, 2019, and USCIS rendered a final

decision denying the petition on May 16, 2019.  *See* PSUF ¶¶ 12–13; DRUF ¶¶ 12–13.  All told, USCIS took approximately six years to render a decision on the operative petition.

Courts have found USCIS delays of between two and four years presumptively unreasonable under the APA.  *See Daraji*, 2008 WL 183643, at *5–6 (finding delay of two years in USCIS review of adjustment petition was unreasonable (citing *Wang v. Gonzalez*, 2007 WL 4463009 (N.D. Cal. Dec. 17, 2007) (holding delay of two years in review of adjustment petition was presumptively unreasonable); *Ying He v. Gonzales*, No. C07-02765 HRL, 2007 WL 4259453 (N.D. Cal. Dec. 4, 2007) (holding delay of two and a half years was not reasonable as a matter of law); *Wang Yi Chao v. Gonzales*, No. C07-1562 PVT, 2007 WL 3022548 (N.D. Cal. Oct. 15, 2007) (holding delay of three years presumptively unreasonable); *Liu v. Novak*, 509 F. Supp. 2d 1, 10 (D.D.C. 2007) (holding four-year delay unreasonable))).  Here, the six-year delay in the adjudication of Plaintiffs' operative petition is longer than the two- to four-year periods of delay found presumptively unreasonable in similar cases.  Accordingly, the length of the delay in this case weighs in favor of finding it unreasonable.

### b. Resultant Prejudice

Both *TRAC* and *OCAWU* instruct courts to inquire whether any prejudice was suffered as a result of the delay.  *See TRAC*, 750 F.2d at 80; *OCAWU*, 145 F.3d at 123.  Plaintiffs focus on two discrete issues on which they were prejudiced: (1) the statements taken from their former landlord, and (2) the issue of Plaintiffs' communication with one another.  Following a review of the record, this Court is persuaded that Plaintiffs suffered prejudice with respect to both issues.

Beginning with the first issue, on April 13, 2011, FDNS agents spoke with C. Michael Rohrbach, who was Plaintiffs' landlord at the time. *See* Record 13 at 49.  This conversation was held in connection with Plaintiffs' first I-130 petition.  *See id.*  Notwithstanding, there was no

mention of any interview with Rohrbach contained in the NOID issued on the first petition nor in the ultimate decision on that first petition. *See* Record 13-5 at 73–75; Record 16-1 at 133–141. Rather, this information first appeared in the NOID issued on Plaintiffs' *second* petition in March of 2019. In other words, Plaintiffs first became aware that an interview was conducted with Rohrbach when the NOID on the operative petition was issued, over eight years after the interview had taken place. *See* Pls. Mot. 26. Plaintiffs indicate that, by the time they found out Rohrbach had been interviewed, they no longer had a personal or professional relationship with Rohrbach. *See id.* at 27.

Defendants argue that Plaintiffs suffered no prejudice with respect to the interview evidence. In particular, Defendants assert that they fully complied with the requirements 8 C.F.R. § 103.2(b)(16) by providing Plaintiffs with notice of the derogatory testimony in March of 2019 in the form of a NOID. To be sure, where USCIS intends to make a decision on a petition based on derogatory information unknown to the petitioner, § 103.2(b)(16) requires that the petitioner "be advised of this fact and offered an opportunity to rebut the information . . . before the decision is rendered . . . ." *See* § 103.2(b)(16). Accordingly, to the extent USCIS intended to base any part of its decision to deny Plaintiffs' operative petition on the interview with Rohrbach, Plaintiffs were entitled to know that Rohrbach was interviewed and were similarly entitled to an opportunity to rebut that evidence.

Defendants suggest that Plaintiffs were made aware of the interview evidence in the March 2019 NOID, and they further argue that Plaintiffs had an adequate opportunity to rebut the interview evidence in their response to the NOID. The Court finds this explanation unavailing. Certainly, USCIS mentioned the interview in the NOID such that Plaintiffs were placed on notice of its existence. Notwithstanding, because of the USCIS's significant delay in

issuing a NOID on the operative petition, Plaintiffs were deprived of a meaningful opportunity to rebut the derogatory evidence. As this Court already indicated, eight years had passed between the initial interview with Rohrbach and the issuance of the NOID. By that time, Plaintiffs no longer had a personal or professional relationship with Rohrbach, which inhibited their ability to locate and interview him for themselves. Moreover, even if Plaintiffs had been successful in locating and interviewing Rohrbach in March 2019, this fact does not necessarily cure the prejudice. Conceivably, to rebut Defendants' testimonial evidence collected from Rohrbach in 2011, Plaintiffs would have had to elicit similar information from Rohrbach about their residence during that same time period. With more than eight years having passed since the initial interview in April 2011, there are inherent reliability concerns with any testimony that Rohrbach could have offered on that subject in March 2019. Put another way, even had Plaintiffs been able to elicit rebuttal testimony from Rohrbach, it is likely that USCIS would have viewed it as unpersuasive given that eight years had lapsed in the interim.[5] Accordingly, this Court is persuaded that Plaintiffs suffered prejudice as a result of USCIS's delay, insofar as they were deprived of an adequate opportunity to acquire rebuttal evidence of Rohrbach's testimony.

---

[5] This concern is well-founded. As USCIS noted in its decision, the relevant standard requires a petitioner to show, by a preponderance of the evidence, that the marriage was bona fide at its *inception*. *See* Record 14-4 at 71. Accordingly, evidence that lacks a temporal proximity to the inception of the marriage naturally carries with it a lower probative value. As the Court discusses in further detail below, USCIS held its own delay against Plaintiffs in adjudicating the operative petition. In particular, USCIS found it unavailing that both Plaintiffs provided an interview without the use of translators in 2016 because "[l]anguage can be developed over a period of years, and there remains a significant date difference between your first and second or third USCIS interviews." *See id.* at 76. Accordingly, that USCIS had gone so far as to hold the passage of years against Plaintiffs lends credence to the concern that USCIS would have simply considered rebuttal testimony of Rohrbach collected in 2019 as having little probative value.

Turning to the second issue, relating to the supposed language barrier between the Plaintiffs, this Court is also persuaded that Plaintiffs faced prejudice as a result of USCIS's delay. Plaintiffs first appeared for an interview with USCIS in April of 2011. *See* Record 13 at 49. At that interview, Espinal used a Spanish translator, and Ak used a Turkish translator. *See id.* Despite Plaintiffs representations that they shared common interests and communicated with one another, USCIS concluded in its NOID on the first petition that "[t]he record was unclear as to how [Espinal] and [Ak] entered into and maintained a courtship and marriage without the ability to effectively communicate with one another." *See id.* On April 22, 2013, just one month after the denial of their first petition, Plaintiffs filed the operative petition. Notwithstanding, it was not until March 28, 2016, nearly three years later, that Plaintiffs were called in for a subsequent USCIS interview.

During the 2016 interview, neither Espinal nor Ak used a translator. *See* Record 14-4 at 76. However, USCIS found this evidence of adequate English communication was ultimately outweighed by Plaintiffs' first USCIS interview, primarily because of the substantial time that had passed between the two interviews. In particular, USCIS concluded that "[l]anguage can be developed over a period of years, and there remains a significant date difference between your first and second or third USCIS interviews." *See id.* In essence, USCIS held the delay between the 2011 and 2016 interviews, a delay of its own making, against Plaintiffs. That Plaintiffs lacked an earlier opportunity to exhibit their communication skills with respect to the operative petition is due to no fault of their own; whether and when to require a subsequent interview was a choice solely within the discretion of USCIS.[6] *See* 8 C.F.R. § 103.2(b)(9) ("USCIS *may*

---

[6] Moreover, as Plaintiffs point out elsewhere in their briefing, USCIS did not comment on or otherwise entertain arguments that supported that Plaintiffs had adequate communication ability at the time of their first petition. In particular, as of the filing of their first petition,

require any applicant . . . to appear for an interview . . . ." (emphasis added)); *see also Sabhari v. Cangemi*, No. 04-1104 ADM/JSM, 2005 WL 1387595, at *7 (D. Minn. June 10, 2005) ("Interviews are permissible but not required when evaluating an I-130 visa petition based on marriage." (citing *Braimah v. INS*, 94 Civ. 6317 (JSM), 1995 WL 390108, *2–3 (S.D.N.Y. July 3, 1995))). Accordingly, this Court is persuaded that Plaintiffs suffered prejudice as a result of USCIS's delay, insofar as they were deprived of an adequate opportunity to provide temporally proximate evidence of their ability to communicate with one another. Even more troubling, USCIS held its own delay against Plaintiffs when reviewing the matter of their communication capabilities. Therefore, this factor weighs in favor of finding the delay unreasonable.

### c. Whether Defendants Establish Cause for the Delay

The final *OCAWU* factor instructs the reviewing court to inquire into whether the agency pleads administrative error, inconvenience, or other practical difficulty in carrying out its legislative mandate. While Defendants briefly address this claim in their response to Plaintiffs' motion, they do not attempt to justify the delay as resulting from any inconvenience or practical difficulty. Instead, Defendants exclusively argue that Plaintiffs did not suffer any prejudice resulting from the "length of the investigation into their marriage." *See* Defs. Resp. 6. Accordingly, in the absence of any cause offered for the delay, this factor weighs in favor of finding the delay unreasonable.

---

Espinal had already taken and passed the English literacy test required to become naturalized. *See* Record 16-3 at 35 (Espinal's proof of citizenship); 8 U.S.C. § 1423(a)(1) (requiring English literacy test for naturalization). Moreover, during the home visit on March 23, 2012, FDNS agents describe conversations held with Ak. *See* Record 13 at 51–52. However, there is no mention of the presence of any translator during that visit. Accordingly, in light of USCIS declining to consider evidence that favored adequate communication skills at the time of the first petition, Plaintiffs were all the more prejudiced by USCIS's failure to favorably consider their communication skills at the time of the subsequent interview because of the delay between the two.

## 2. Whether the Delay Was Unreasonable

Having reviewed the relevant *TRAC* and *OCAWU* factors, this Court concludes that the delay USCIS engaged in with respect to the operative petition was unreasonable. Foremost, the delay spanned over six years, from April 2013 to May 2019. In their briefing, Defendants did not attempt to provide any explanation for the length of the delay. Indeed, in a USCIS press release dated November 25, 2013, the Agency indicated that it was addressing I-130 petitions filed as recently as February 2013. *See USCIS Update on the Processing Times of Form I-130s Filed by U.S. Citizens for Their Eligible Immediate Relatives*, 90 No. 45 INTERPRETER RELEASES 2231, 2232 (Nov. 25, 2013). Though Plaintiffs filed their operative petition shortly thereafter in April 2013, it strains credulity that USCIS waited three years before taking any action thereon. This supposition finds support in USCIS's own proclamations. In the same press release cited above, USCIS stated its expectation that it would "return to an average processing time of five months for these Forms I-130 by May 2014." *See id.* Despite these representations, Plaintiffs' operative petition, filed in April 2013, went seemingly untouched for three years, until the Request for Evidence was sent in March 2016. It would then go untouched for another three years, until issuance of the NOID in March 2019.

Moreover, the delay in this case was not harmless, as it had a prejudicial effect on Plaintiffs' ability to rebut and respond to evidence collected by Defendants. By the time Plaintiffs had learned in 2019 that Rohrbach was interviewed by USCIS, Plaintiffs were hamstrung in their ability to effectively rebut that testimony, as (1) it had been taken eight years prior in 2011, and (2) Plaintiffs no longer had any professional or personal relation with Rohrbach. In an even more troubling example, USCIS held its own delay against Plaintiffs in asserting that Plaintiffs' improved English skills during a 2016 interview could have been the

product of language developed over a period of years, rather than probative evidence of Plaintiffs' abilities to effectively communicate with one another dating back to the inception of their marriage. Both Rohrbach's testimony and Plaintiffs' communication skills undergirded USCIS's decision to ultimately deny the operative petition.

Finally, USCIS does not offer any explanation of inconvenience, resource scarcity, or administrative error to justify the delay. Indeed, as noted directly above, USCIS disseminated its expectation that it would return to an I-130 processing time of five months by May 2014.

Therefore, having reviewed the relevant *TRAC* and *OCAWU* factors, this Court concludes that USCIS engaged in an unreasonable delay with respect to its review of the operative petition, and Plaintiffs suffered prejudice as a result. Accordingly, USCIS's delay represents a violation of the APA, and summary judgment is granted in Plaintiffs' favor and against Defendants on that claim.

### B. Fashioning an Appropriate Remedy

Having determined that the delay was unreasonable, and prejudice was suffered, the Court turns to fashioning a remedy. "A remand may be ordered with or without . . . specific instructions." *See IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 78 (Ct. Fed. Cl. 2022); *see also id.* at 79 (citing *Miccosukee Tribe of Indians of Fla. v. United States*, No. 04-21448-CIV, 2008 WL 2967654, at *41 (S.D. Fla. July 29, 2008) ("The Supreme Court has suggested that in rare circumstances, it is appropriate in cases brought under the APA for courts to go beyond simply remanding a matter back to the agency . . . . Circuit courts have upheld district court decisions to remand with specific instructions to the agencies in cases brought under the APA."); *All. for the Wild Rockies v. Zinke*, 265 F. Supp. 3d 1161, 1181 (D. Mont.

2017) ("[U]pon remand, a court should provide the agency with specific instructions to address its errors." (citing *Friends of Wild Swan v. EPA*, 74 F. App'x 718, 722 (9th Cir. 2003))).

While the Court notes that remand with specific instructions occurs only under rare circumstances, it is the Opinion of the Court that such circumstances are present here. It is true that cases involving unreasonable delay by USCIS are not rare on their own, *see Daraji*, 2008 WL 183643, *8 (finding delay unreasonable and remanding for adjudication of petition within ninety days), nor are cases involving violation of the Agency's disclosure requirements under 8 C.F.R. § 103.2(b)(16), *see Naiker v. USCIS*, 352 F. Supp. 3d 1067, 1079 (W.D. Wash. 2018) (finding violation of § 103.2(b)(16) and remanding for reconsideration on only that evidence in the record that was disclosed to the petitioner). Notwithstanding, there are hardly any cases—if any at all—that involve the sort of circumstances present in this case, which involve elements of the delay at issue in *Daraji* in addition to elements of the evidentiary prejudice found in *Naiker*. Whereas many cases involving delay result in judicial orders compelling USCIS to render a timely decision, such an order would be wholly ineffective here, as a decision was ultimately rendered. Notwithstanding, the decision in this case was undoubtedly grounded, at least in part, on the prejudicial evidence discussed above. Similar to cases involving spoliation, by the time Plaintiffs were made aware of the existence of the evidence, their opportunity to obtain rebuttal testimony was demonstrably prejudiced. Accordingly, unique and rare circumstances in this case exist such that a remand with specific instructions is appropriate.

Moreover, equitable considerations favor the inclusion of specific instructions along with the Court's remand. USCIS ultimately decided to deny the operative petition, after having considered the prejudicial evidence. Accordingly, to remand without providing any specific instructions as to how that evidence should be treated on a new adjudication would do nothing to

cure the prejudice. Therefore, this Court remands the matter to the Board of Immigration Appeals with specific instructions for treating the prejudicial evidence, which are set forth in the Order accompanying this Opinion.

## V.     CONCLUSION

Following a review of the briefing and administrative record in this matter, this Court concludes that USCIS acted in violation of the APA. Specifically, USCIS failed to adjudicate Plaintiffs' I-130 petition within a reasonable amount of time, which in turn caused Plaintiffs to suffer prejudice. Accordingly, Plaintiffs' motion for summary judgment is granted and Defendants' motion is denied. Because this Court finds the decision of USCIS relied in part on the prejudicial evidence, it does not opine on Plaintiffs' remaining APA claims and Fifth Amendment claims at this time.

The matter is remanded to USCIS for a new adjudication of the operative petition with specific instructions for curing the prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge